**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-1379**

_____

ANTHRY RAUL MILLA,

　　　　　Plaintiff - Appellant,

　　v.

PFC D. BROWN, ID #331973; PFC MCCOMAS, ID #340298,

　　　　　Defendants - Appellees.

-----------------------------------

STEPHEN FRANCIS RAIOLA,

　　　　　Court-Assigned Amicus Counsel.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:20-cv-00694-AJT-MSN)

_____

Argued:  May 7, 2024　　　　　　　　　　　　　　　Decided:  July 19, 2024

_____

Before GREGORY, HEYTENS, and BENJAMIN, Circuit Judges.

_____

Vacated and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge Heytens and Judge Benjamin joined.

_____

**ARGUED:**  Stephen Francis Raiola, KIBLER FOWLER & CAVE LLP, Pittsburgh, Pennsylvania, for Court-Assigned Amicus Counsel.  Kimberly Pace Baucom, FAIRFAX COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Appellees.  **ON BRIEF:** Charles Cardinal, KIBLER FOWLER & CAVE LLP, Los Angeles, California, for Court-Assigned Amicus Counsel.

GREGORY, Circuit Judge:

On the early morning of June 7, 2019, two police officers spotted, detained, and seized Mr. Anthry Milla as he sat in a vehicle in his driveway. At the time, the officers were investigating a nearby stabbing, but they did not have a witness to the crime or a description of a potential suspect. After his short detention and release, Milla filed a single claim, pro se complaint against Officers Brown and McComas pursuant to 42 U.S.C. § 1983, asserting violations of his Fourth Amendment rights. The district court granted summary judgment to the officers and found that their actions were justified under the totality of the circumstances. We disagree and conclude that the officers lacked sufficient reasonable, particularized suspicion as to Milla and should not have seized him or searched his vehicle. Accordingly, we vacate the district court's grant of summary judgment and remand this matter for further proceedings.

I.

On June 7, 2019, around 4:20 a.m., the Fairfax County Department of Public Safety Communications (DPSC) received an anonymous call reporting that a man had been stabbed in the chest and was banging on the doors of a Shell gas station in Herndon, Virginia. The caller advised that the man was bleeding heavily.

An officer drove to the gas station to investigate. Once there, the officer discovered a man with a "deep slash wound on his arm" and a "makeshift tourniquet" screaming and cursing at the gas station attendant. J.A. 26–27.[1] Though the officer tried to talk to the

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

injured man, the man did not respond and continued to scream at the attendant. The officer observed that the man smelled of alcohol, and that he either would not or could not "provide any information that would assist police in the investigation of who had hurt him, or what had occurred." J.A. 27. Consequently, the officer could not determine how, where, when, or why the man had sustained his injury. J.A. 92. Likewise, police had no description of a stabbing suspect.

A medic unit arrived at the scene and began tending to the injured man. An officer tried to question the man again once he was inside the ambulance but remained unsuccessful. Meanwhile, a Fairfax County Police Department (FCPD) helicopter went to the gas station, prepared to conduct an aeromedical evacuation if needed. But once officials in the helicopter learned that an air evacuation was unnecessary, they transitioned the helicopter from a medical role into a law enforcement role. With Master Police Officer Tanny Russell at the helm, the helicopter engaged its Forward-Looking Infrared ("FLIR") camera to search for any persons or vehicles in the area that may have been involved in the stabbing incident. A FLIR camera detects objects emitting infrared radiation; the warmer the object is, the more radiation in emits. Vehicles that have been recently operated—colloquially referred to as "hot"—will emit greater amounts of radiation and thus will appear more prominently on the FLIR camera.

After the helicopter unit identified all of the warm vehicles in the gas station parking lot, the officers began to search for people in the surrounding area. So, the helicopter used the FLIR camera to survey the area surrounding the gas station. The helicopter unit observed a hot vehicle parked outside the closed gate of a private residence, about 0.2 miles away from

3

the gas station. Russell radioed that the car in question had its taillights on and its headlights off. She initially said that she could not tell whether a person was in the driver's seat.

Officers Brown and McComas drove to the residence. Before they arrived, they deactivated the emergency lights and sirens on their cruisers. Brown pulled into the driveway and used his cruiser's headlights to illuminate Milla's vehicle. Milla—who was seated inside the driver's seat of the vehicle with his driver's door open when Brown and McComas arrived—responded by pulling the door shut. Milla later asserted that, when Brown and McComas pulled up, he was in the front seat of his car searching for his headphones. Milla said that, because the police did not immediately identify themselves, he "believed Brown to be one of several people who either lived at or frequented the residence." J.A. 9, 93. As such, Milla stated that he merely shut the door "to allow the vehicle to pass by and through the gate to park." *Id.*

But Brown and McComas interpreted Milla's actions through a lens of suspicion. "Based upon the information that they had regarding the stabbing investigation occurring nearby, in addition to the position of the vehicle . . . and Milla's behavior when they arrived on scene, Officers Brown and McComas determined that they would detain any individuals in the vehicle to investigate whether they were involved in the incident." J.A. 33. Thus, Brown and McComas—with weapons drawn—ordered Milla to come out of his car with his hands up. Once Milla complied, they instructed him to walk backwards toward them with his hands still in the air. When Milla reached the officers, McComas handcuffed him and placed him in the back of the cruiser.

4

Brown and McComas searched Milla's car but did not find any weapons or evidence related to the stabbing. After frisking Milla and finding no weapons or evidence on his person, the officers asked Milla to provide his identification. Initially, Milla refused to do so. However, his parents soon entered the driveway and provided officers with Milla's ID. Officers released Milla once his parents confirmed that he lived at the residence. The entire interaction with Milla took about eight minutes and was recorded on the cruiser's dashboard camera.

## II.

Milla filed a pro se complaint against McComas and Brown in their individual capacities under 42 U.S.C. § 1983. The complaint asserted that the officers violated his Fourth Amendment rights by accosting him while he was seated in his own car in his own driveway, detaining and frisking him without reasonable suspicion, and searching his car without probable cause.

Despite successfully filing his complaint, Milla struggled to prosecute his case as a pro se litigant. Milla sent subpoenas to the Court three days after discovery had closed, asking the clerk to "refer the matter to a judge" and mail him "an e-notice registration form." J.A. 19. He also attempted to amend his complaint well after the deadline to amend had passed. Further, several documents mailed to Milla were returned as undeliverable.

Defendants Brown and McComas moved for summary judgment, arguing that they had an objectively reasonable and articulable suspicion to detain Milla based on: their investigation of the recent, nearby stabbing; the early morning hour; the fact that Milla's car

5

was stopped outside the gate of a residence that they did not know was his; the fact that Milla's car had been recently driven and a person (Milla) was crouched in the driver's seat for a sustained period of time; and their observation that Milla closed the car door when they arrived. J.A. 42. The officers further claimed that the frisk and protective sweep of Milla's vehicle were valid given the limited information available to them at the time and the nature of the crime being investigated. J.A. 43–47. They also sought qualified immunity, claiming that "it is not firmly established in the Fourth Circuit that an officer's brief detention and protective search of an individual and his property, when that individual is near the scene of a violent crime during unusual circumstances, and attempts to hide from responding officers, is a violation of that suspect's Fourth Amendment rights." J.A. 49.

On the first page of their motion, Defendants included a footnote warning Milla that his case could be dismissed if he failed to respond and provide affidavits contradicting Defendants' summary judgment motion within 21 days. J.A. 22. However, the record does not show that the court itself ever issued a similar warning.

Milla responded to the motion but did not provide affidavits. In his response, he argued that the police lacked reasonable suspicion to detain him. Milla claimed that, when Brown and McComas approached him, he was seated normally in his car and that his behavior was not evasive. He further pointed out that officers never had a description of a suspect or suspect vehicle, yet they ignored other "hot" vehicles in the area and chose to search his. J.A. 92. Additionally, he noted that because the victim refused to speak to police, "the police didn't know whether a crime had occurred or not and didn't know which direction from the scene to start looking." J.A. 92.

6

The district court granted summary judgment to the Defendants. It found that, based on the totality of the circumstances, Brown and McComas had reasonable suspicion to perform a *Terry* stop and detain Milla, and that Milla failed to raise a genuine dispute of material fact to preclude summary judgment. And because Defendants had reasonable suspicion, the court said, the subsequent pat down of Milla and search of his car were also reasonable in light of the totality of the circumstances. J.A. 137–38. The court also held that the officers were entitled to qualified immunity because they did not violate Milla's constitutional rights. J.A. 138. Milla timely appealed.

III.

We review a district court's grant or denial of summary judgment de novo, "viewing the facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party." *Woollard v. Gallagher*, 712 F.3d 865, 873 (4th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome of the suit under the governing law." *Haze v. Harrison*, 961 F.3d 654, 658 (4th Cir. 2020) (cleaned up).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. As such, "warrants are generally required to search a person's home or his person." *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978). However, a police officer can, consistent with the

7

Fourth Amendment, conduct a brief, investigative stop (i.e., a *Terry* stop) "predicated on reasonable, articulable suspicion that 'criminal activity may be afoot.'" *U.S. v. Mitchell*, 963 F.3d 385, 390 (4th Cir. 2020) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

Courts measure reasonable suspicion based on the totality of the circumstances. *United States v. Peters*, 60 F.4th 855, 864 (4th Cir. 2023); *see also United States v. Slocumb*, 804 F.3d 677, 682 (4th Cir. 2015). Reasonable suspicion requires more than a mere hunch, but it is less demanding than probable cause and "may well fall considerably short of satisfying a preponderance of the evidence standard." *United States v. Massenburg*, 654 F.3d 480, 485 (4th Cir. 2011) (cleaned up). Reasonable suspicion to initiate a *Terry* stop requires a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Feliciana*, 974 F.3d 519, 523 (4th Cir. 2020) (cleaned up). "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. Seemingly innocent factors, when viewed together, can amount to reasonable suspicion. *Slocumb*, 804 F.3d at 682. But this Circuit decries "Government attempts to spin . . . largely mundane acts into a web of deception." *United States v. Foster*, 634 F.3d 243, 248 (4th Cir. 2011).

Even if an investigatory stop is justified by reasonable suspicion, a subsequent frisk or search is not necessarily permitted. *United States v. Foster*, 824 F.3d 84, 89 (4th Cir. 2016). Any frisk must be supported by a reasonable suspicion that the suspect is armed and dangerous. *Id.*; *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

8

Milla maintains that neither officer can satisfy their burden to show that reasonable suspicion justified his warrantless seizure. Of course, Brown and McComas disagree. Like the court below, they maintain that they had reasonable suspicion to detain Milla based on: (1) the late hour, (2) the close location of Milla's car relative to the victim and the evidence of the car's recent operation, (3) Milla's presence in his car, (4) the absence of other persons in stopped "hot" vehicles in the area, (5) the temporal proximity between the time of the apparent stabbing and the location of Milla's car, and (6) Milla closing his door when approached by the defendant officers. Despite the length of this list, we cannot agree that these factors, whether viewed separately or together, were sufficient for the officers to form the reasonable suspicion needed to justify their actions.

A.

Officers Brown and McComas lacked an objective basis to suspect that Milla *specifically* engaged in any crime, and thus lacked the requisite particularized basis for the stop.[2] None of the circumstances identified by the officers supported their conduct. First, this Court has explained that nearby exigent circumstances (such as a recent stabbing) do not justify a warrantless seizure of a person unless the seizure is narrowly targeted "based on specific information of a known crime and a controlled geographic area." *United States v. Curry*, 965 F.3d 313, 325–26 (4th Cir. 2020) (en banc). In *Curry*, "officers approached

---

[2] The parties do not dispute that Milla was seized. Video shows that, after Milla shut his car door, officers drew their weapons and began issuing verbal commands for him to exit the vehicle with his hands raised, walk backwards toward their voices, and kneel on the ground. After Milla complied, the officers placed him in handcuffs and sat him in the backseat of one of the police cruisers.

9

Curry in an open field, one of several possible escape routes [after a shooting], in an area that they only *suspected* to be near the scene of an *unknown* crime." *Id*. at 325 (emphasis in original). Like here, the officers lacked a description of the assailant, and did not know whether the suspect was in the vicinity or in which direction they fled. We found this insufficient for reasonable suspicion. "Allowing officers to bypass the individualized suspicion requirement based on the information they had []—the sound of gunfire and the general location where it may have originated—would completely [undermine] a fundamental Fourth Amendment protection and create a dangerous precedent." *Id*. at 326.

Defendant-Appellees' claims suffer from the same deficiency as the officers' claims in *Curry*. Brown and McComas cannot use the mere fact that a stabbing might have occurred somewhere nearby to justify Milla's seizure. *See also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (stating that an individual's mere presence within the vicinity of criminal activity "is not enough to support a reasonable, particularized suspicion that the person is committing a crime"). *Curry* held that proximity to gunshots does not permit a suspicionless seizure; the same is true of proximity to a suspected stabbing.

The nature of the anonymous tip further weakens the officers' argument. The caller, who did not identify themselves on the phone, said that a man "who had been stabbed" in the chest was banging on the doors of a Shell gas station and was bleeding heavily. But the caller did not provide a basis for this knowledge, nor did they identify or describe any suspects. Because "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," and because an anonymous tip must be reliable in its assertion of illegality to be actionable, the tip alone is not enough to provide reasonable suspicion. *See*

10

*Florida v. J.L.*, 529 U.S. 266, 270–72 (2000); *see also Massenburg*, 654 F.3d at 491 (stating that where a tip is unreliable, the question of reasonable suspicion becomes closer).

It's also true that "the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect" can contribute to a finding of reasonable suspicion. *United States v. George*, 732 F.3d 296, 299 (4th Cir. 2013). We have recognized that factors like the lateness of the hour can support a finding of suspicion in the totality-of-the-circumstances analysis. *Slocumb*, 804 F.3d at 682; *United States v. Glover*, 662 F.3d 694, 698 (4th Cir. 2011). Nevertheless, we regularly find that claims based on the late hour or nature of the neighborhood, without more, do little to support a claim of particularized suspicion toward the seized individual. *See Slocumb*, 804 F.3d at 683; *Massenburg*, 654 F.3d at 488. Here, the time that the officers seized Milla—just after 4:30 a.m.— may still be nighttime for most, but for others, it may be the start of a morning routine. So the time of day (or night) adds little to the analysis. Further, the record does not support any claim that the area in question was a high crime area.

Mere proximity to a suspected crime "falls far short of supplying the officers with reasonable suspicion." *Foster*, 824 F.3d at 92. First, Milla's car was close to the gas station in question, but it was not the only car around. Nothing indicates that the officers checked the other hot cars at the gas station, stopped cars driving by, or stopped and questioned pedestrians. As such, the proximity between Milla's car and the gas station does not offer much justification for the stop when police failed to demonstrate similar urgency regarding other potential suspects in the area and when nothing suggested that a vehicle was even involved in the incident. Likewise, the short time between the anonymous phone call and

11

when police spotted Milla's car offers little justification because the caller only said that someone had stab wounds. An actual perpetrator could have been lurking around a corner, speeding down the freeway, or sitting safely back in their own home; the police had no temporal information upon which to base their suspicions.

Several things unrelated to criminal behavior explain Milla's actions prior to his seizure. Though other factors contribute to the totality-of-the-circumstances analysis, individual behavior is the only substantial basis for particularized suspicion. *See Massenburg*, 654 F.3d at 491. On its face, none of Milla's conduct was criminal. But Appellees insist that Milla's slumped posture in his seat and his shutting the door when police arrived were akin to flight or to furtive or evasive movement. But Milla's actions were not evasive. At most, they were a decision to "ignore the police and go about his business." *Wardlow*, 528 U.S. at 125. And refusal to engage with police is not, by itself, a valid basis for reasonable suspicion. *See id.* (stating that, while headlong, unprovoked flight is inherently suspicious, refusal to cooperate or acknowledge the police is not); *Florida v. Royer*, 460 U.S. 491, 498 (1983) (stating that an individual has a right to ignore police and go about his business when an officer approaches without reasonable suspicion or probable cause); *Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure").

In fact, the Appellees here cannot clearly argue that Milla even recognized them as police officers before he shut his car door. Not only was it dark outside, but the police cruiser that approached Milla did not have its lights or sirens on. *Cf. United States v. Critchfield*, 81 F.4th 390, 394–95 (4th Cir. 2023) (stating that an arguably evasive reaction

12

does not contribute to a finding of reasonable suspicion where the officer is not recognizable as law enforcement). There is nothing suspicious about closing (and even locking) one's car door when an unidentified vehicle pulls up behind someone in their driveway. At a minimum, whether Milla recognized the vehicle as a police cruiser before he shut his car door is a genuine issue of material fact that should preclude summary judgment. Thus, even when each of the factors are viewed together and examined within the full context of the stop, the stop was unconstitutional.

## B.

The cases cited by Appellees do little to convince us that the stop and seizure were justified. Admittedly, this Circuit's case law is not uniform as to which combinations of circumstances are sufficient to support a finding of reasonable suspicion. Nonetheless, the balance of the case law aids Milla.

Appellees first cite an unpublished case, *United States v. Ruffin*, 814 F. App'x 741, 747 (4th Cir. 2020), for the rule that a suspect's evasiveness can create reasonable suspicion. That's true. But, in *Ruffin*, the police had much more information about both the crime being investigated and the perpetrator than did the police here.

In *Ruffin*, the police had a clear source of information, a trained police dog who tracked a suspect to a specific area, a single individual within the identified area, a connection between the crime committed and the actions of that individual, and a wholly implausible explanation for that individual's presence in that area. Ruffin's evasive behavior was suspicious only in the context of all those other factors, none of which is present here. For instance, here, police officers lacked anything that could point them to a

specific individual. And in contrast to *Ruffin*, who became increasingly agitated during his encounter with police, Milla was cooperative: officers approached him with force by drawing their weapons, and he raised his hands and walked backwards to them as demanded. *Ruffin* is inapposite here.

Appellees next cite *United States v. Foster*, 824 F.3d at 95, for support. Resp. Br. 26. But this reliance is misplaced. While this Court ultimately concluded that the officers in *Foster* had reasonable suspicion for a seizure, that conclusion was not based on any factors comparable to those present here. In *Foster*, police received an anonymous 911 call about a late-night gunshot in an area considered to be a high crime area. 824 F.3d at 95. An officer arrived shortly after and approached Foster because he was the only person in the area. *Id*. Foster did not respond to the officer's questions and avoided eye contact. The Court held that these facts, individually and cumulatively, did *not* give rise to reasonable suspicion. *Id*. at 92–94. Rather, reasonable suspicion only arose once the officer asked Foster if he was armed and Foster reached for his right pocket. *Id*. at 94–95.

Appellees also cite *United States v. Smith*, 396 F. 579 (4th Cir. 2005). They say that *Smith* establishes that a suspect's presence in a driveway that is "more than 200 feet from the public road but still some distance from a private residence" leads to the reasonable conclusion that a suspect is hiding in the driveway. *Id*. at 585. But that is a mischaracterization. In *Smith*, a driver "braked and abruptly turned suddenly into a private gravel driveway" after approaching a police checkpoint. *Id*. Based on this sudden action, and the fact that the car did not continue up to the residence at the end of the driveway, police believed that the driver wanted to evade the checkpoint. *Id*. That, not the mere

14

presence of a car in a driveway off the public road, was the trigger for reasonable suspicion. Here, there was no checkpoint. Police cannot reasonably interpret Milla closing his car door as being comparable to Smith's actions to evade a checkpoint. Nor can they interpret Milla's actions as an attempt to evade police when there's strong evidence that the officers' car was not recognizable as a police car. *See Critchfield*, 81 F.4th at 394–95.

Milla's case looks more like *United States v. Foster*, 634 F.3d 243, 246–48 (4th Cir. 2011) (a different *Foster* case from the one discussed above). In *Foster*, we determined that a detective's prior knowledge of the defendant's criminal record, the defendant's "sudden appearance from a crouched position [in the passenger's seat of a vehicle], immediately after [the individual in the driver's seat] had apparently said something to him after seeing the detective walking towards them," and the defendant's subsequent "frenzied arm movements," whether viewed separately or together, did not constitute reasonable suspicion necessary for an investigative stop. *Id*. In fact, the officers here had much less basis for reasonable suspicion than they had in *Foster*, as they knew nothing criminal or biographical about Milla and approached Milla in a vehicle that Milla did not immediately recognize as a police cruiser. Given that we declined to find reasonable suspicion in *Foster*, Officers Brown and McComas certainly cannot prevail on their motion for summary judgment under these facts.

Other cases from this Circuit support the conclusion that officers lacked sufficient information to form reasonable suspicion as to Milla. *See United States v. Massenburg*, 654 F.3d 480, 486–90 (4th Cir. 2011) (an anonymous call about a gunshot in a high crime area, the defendants' presence four blocks away, and the fact that defendants were the only

15

people seen in the area did not give rise to reasonable suspicion); *United States v. Slocumb*, 804 F.3d 677, 681–84 (4th Cir. 2015) (defendant's presence in high crime area late at night in a parking lot of a closed commercial business, and officer's bases for concluding that he was nervous, did not constitute reasonable suspicion); *United States v. Black*, 707 F.3d 531, 539 (4th Cir. 2013) (an individual's presence [but not patronage] at a gas station, his association with others with prior arrest and firearm records, the display of a firearm by an associate, and presence in a high crime area at night do not support a finding of reasonable suspicion); and *United States v. Sprinkle*, 106 F.3d 613, 617–19 (4th Cir. 1997) (knowledge of defendant's criminal record, and observation of defendant and another individual huddled together in center of a car did not constitute reasonable suspicion for an investigatory stop).

Officers Brown and McComas succumbed to the impulse to spin "largely mundane acts into a web of deception." *Foster*, 634 F.3d at 248. Viewed in the light most favorable to Milla, the non-movant, the facts indicate the following: Milla, minding his own business on his parents' property, fit no description, posed no threat, and evaded nothing. And once approached by officers, Milla's behavior betrayed none of the markers of furtiveness or excessive nervousness that themselves peak suspicion. As such, the district court erred in finding that the totality of the circumstances added up to reasonable suspicion, and in granting summary judgment to the officers.

IV.

We briefly address the question of qualified immunity.  The district court determined that, "because the Officers had reasonable and articulable suspicion for detaining Milla, the brief pat down of Milla, and the search of his vehicle, were also reasonable in light of the totality of the circumstances.  And because their actions during their encounter with Milla did not violate Milla's constitutional rights, qualified immunity also shields Officers Brown and McComas from liability."  J.A. 137–38.

Qualified immunity shields government officials from liability so long as their conduct does not violate clearly established statutory or constitutional rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The burden of establishing a qualified immunity defense rests on the officers.  *Meyers v. Baltimore County*, 713 F.3d 723, 731 (4th Cir. 2013).  The officers must show that either they did not violate a constitutional right, or that the right was not clearly established when the challenged conduct occurred.  *Id*.  The relevant inquiry is "whether the state of the law at the time of the events at issue gave the officer fair warning that his alleged treatment of the plaintiff was unconstitutional."  *Jones v. Buchanan*, 325 F.3d 520, 531 (4th Cir. 2003) (internal quotation marks omitted).

The district court's award of qualified immunity relied on its determination that the officers had a reasonable and articulable suspicion to detain Milla as a stabbing suspect.  J.A. 137.  But, as we have already discussed, that determination fails to view the evidence in the light most favorable to Milla.  When Brown and McComas seized Milla, this Circuit's case law required that a police officer have "reasonable suspicion supported by articulable facts that criminal activity may be afoot" to justify an investigative detention.

17

*United States v. Sokolow*, 490 U.S. 1, 7 (1989). We have also said that a failure to cooperate and proximity to a suspected crime are not enough to create reasonable suspicion. *See Wardlow*, 528 U.S. at 125; *Curry*, 965 F.3d at 313–31; *Foster*, 824 F.3d at 92; *Massenburg*, 654 F.3d at 485–87. Because we vacate the district court's award of summary judgment to the officers, we also vacate its award of qualified immunity.

V.

Milla also argues that, even if the district court correctly found that officers had reasonable suspicion, this Court must still vacate and remand the district court's ruling because the district court failed to appoint counsel to Milla or provide Milla with the notice required under *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). Under *Roseboro*, before a court grants summary judgment against a pro se party for failure to substantiate his claims, the pro se party must be given notice of his right to file counter-affidavits and other relevant materials and informed that his failure to do so might result in dismissal of his case. *See id.*; *Pledger*, 5 F.4th 511, 516 (4th Cir. 2021). The court must provide this notice in a manner that is "sufficiently clear to be understood by a Pro se litigant and calculated to apprise him of what is required under Rule 56." *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979). This rule recognizes that pro se litigants require additional information to comprehend the proceedings and fairly apprise them of what is required. *Roseboro*, 528 F.2d at 310 (citing *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)).

Appellees argue that, even though the district court itself did not issue a *Roseboro* warning, the defendant-appellees issued an adequate warning as required by Eastern

District of Virginia's Local Rule 7(K). Resp. Br. 25–26. Indeed, Appellants used the exact text required by the Local Rule and, as instructed, included it as a footnote on the first page of the motion for summary judgment. The language included all the information that would otherwise be mandated in a court-issued *Roseboro* notice. Appellees say that this was sufficient, citing to numerous cases that discuss the *Roseboro* warning in the passive voice, and thus implying that it does not matter whether the court or a party issues the warning so long as the pro se litigant is sufficiently notified. Resp. Br. 25 (citing *Taccino v. Nat'l Rural Letter Carriers Ass'n*, 120 F. App'x 453–54 (4th Cir. 2005); *United States v. Swann*, 21 F. App'x 138, 139 (4th Cir. 2001)).[3]

As a threshold matter, we note that Milla failed to raise this *Roseboro* issue below, despite his filing a motion to reconsider after the court's grant of summary judgment to the officers. Issues raised for the first time on appeal are generally not considered absent exceptional circumstances. *See Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004). This Court, however, has held that—in civil cases—we review forfeited arguments for "fundamental" error, an inquiry that is at least as searching as the plain error standard set out by the Supreme Court in *United States v. Olano*, 507 U.S. 725 (1993). *In re Under Seal*, 749 F.3d 276, 285–86 (4th Cir. 2014) ("[W]hen a party in a

---

[3] Although Appellees cite unpublished cases that use the passive voice, there are published cases that do the same. *See Zahradnick*, 600 F.2d at 460 (stating that *Roseboro* requires that the "Pro se plaintiff must be advised of his right to file counteraffidavits or other responsive material" or else face summary judgment against him); *Carter v. Hutto*, 781 F.2d 1028, 1033 (4th Cir. 1986) (explaining that *Roseboro* held that, prior to summary judgment, a "litigant must be advised of his right to file responsive material and alerted to the possible consequences of failure to do so.").

civil case fails to meet the plain-error standard, we can say with confidence that he has not established fundamental error."). Under *Olano*, an appellate court can use its discretion to correct an error not raised below if (1) there is an error; (2) that error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 732. An error is plain when it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Despite its availability, we decline to undergo any fundamental error analysis because Milla did not address this *Roseboro* argument in his informal opening brief. And, under our Rule 34(b), "our review is limited to issues preserved in that brief." *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014); *see* Oral Arg. 5:05–6:10 (Milla's counsel not disputing that the Roseboro issue was never raised in the informal opening brief).

We therefore reserve the question of whether EDVA's local rule complies with *Roseboro* for another case in which that issue is properly preserved.

## VI.

Finally, Milla asks that we instruct the district court to consider appointing counsel for him given his in forma pauperis status. "If it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978).

But Milla did not request counsel from the district court—a fact that undermines his argument. So, the court was never asked to consider whether or not Milla had the capacity

20

to present his claim.  We recognize that the district court could have appointed counsel for Milla, a non-prisoner in forma pauperis litigant, without his first requesting it.  *See* 28 U.S.C. § 1915(e)(1); *see Mallard v. U.S. Dist. Ct. for the S.D.N.Y.*, 490 U.S. 296, 307 (1989) (emphasizing that Section 1915 allows "courts to ask but not compel lawyers to represent indigent litigants").  However, Milla does not ask us to convert this discretionary rule into a mandatory one, and we decline to do so.  And like his *Roseboro* argument, Milla forfeited this argument because he failed to make it in his informal brief.  *See Jackson*, 775 F.3d at 177.  Therefore, we decline to reach the question of appointment of counsel.

## VII.

The facts, viewed in the light most favorable to Milla, support a conclusion that Officers Brown and McComas lacked particularized suspicion to stop and seize Milla.  The anonymous call provided limited information about the alleged crime and offered no details about any assailants.  Nonetheless, the officers targeted Milla due to his "hot" car and used his innocuous conduct to justify escalating the encounter by detaining Milla at gunpoint.  Under this reasonable interpretation of facts, their actions were neither necessary nor justified.

As such, we vacate the district court's grant of summary judgment to the officers and remand the matter for further proceedings consistent with this opinion.

*VACATED AND REMANDED*